**'08 CIV 6484**

RECEIVED
JUL 21 2008
U.S.D.C. S.D.N.Y.
CASHIERS

Michael J. Frevola
H. Barry Vasios
Christopher R. Nolan
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
BNP PARIBAS (SUISSE) S.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BNP PARIBAS (SUISSE) S.A.,

           Plaintiff,

      -against-

AVAILABILITY SHIPPING LTD., OVI LTD., and
OKTAN ENERGY & V/L SERVICE SP Z.O.O.

          Defendants.

---

08 Civ. _____

**VERIFIED
COMPLAINT**

---

    Plaintiff, BNP Paribas (Suisse) S.A. ("BNPP" or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, for its verified complaint against Availability Shipping Ltd. ("Availability"), OVI Ltd. ("OVI") (collectively "Shipowner Defendants"), and Oktan Energy & V/L Service SP z.o.o. ("Oktan"), alleges as follows:

    1.    This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.      At all times material herein, plaintiff BNPP was and is a business entity organized and existing under the laws of Switzerland and maintains a place of business at Place de Hollande 2, Case postale, CH-1211 Genève 11, Switzerland.

3.      Upon information and belief, at all times material herein, defendant Availability is and was a business entity organized and existing under the laws of Latvia with an address care of OVI Ltd., 35, Tvaika Street, Riga, Latvia.

4.      Upon information and belief, at all times material herein, defendant OVI Ltd. is and was a business entity organized and existing under the laws of Latvia with an address at 35, Tvaika Street, Riga, Latvia.

5.      Upon information and belief, at all times material herein, defendant Oktan is and was a business entity organized and existing under the laws of a foreign country with an address at ul. Chmielewskiego 22a , PL-70-028, Szczecin, Poland.

6.      On or about April 26-27, 2008, 2,220.527 metric tons of Gasoil 50 PPM in bulk (the "Cargo") was loaded on board the M/T AVAILABILITY (the "Vessel") at Riga, Latvia for shipment to Gdansk, Poland.

7.      On or about April 26, 2008, the Master of the Vessel, Aleksandrs Leonovich, issued bill of lading no. 274 covering 700.243 metric tons of the Cargo, and on or about April 27, 2008, the Master issued bill of lading no. 1 covering 1,520.284 metric tons of the Cargo (collectively "Original Bills").  Both bills of lading contained the Vessel's stamp.  True and correct copies of the Original Bills, including the reverse side of bill of lading no. 274, are annexed hereto as Exhibit 1.

8.    Upon information and belief, at all times material herein, Availability is and was the registered owner of the Vessel and issued the Original Bills through its Master, Aleksandrs Leonovich.

9.    The Original Bills were issued "to the order of" BNPP as consignee and BNPP holds full sets of the Original Bills.

10.    The Original Bills were issued to the order of BNPP as collateral for a credit facility granted by BNPP to the seller of the Cargo, International Impex Limited ("Impex"), in the amount of US$2,490,292.56.

11.    The Original Bills are documents giving the holder title to and the exclusive right to dispose of the Cargo, and BNPP granted Impex the credit facility on the understanding that the Cargo would be released by BNPP to the offtaker upon payment of the purchase price into the Impex's account with BNPP.

12.    The Cargo had been sold to Oktan Energy & V/L Service S.P. ("Oktan"), thus BNPP was to release the Cargo to Oktan upon payment of the purchase price into Impex's account with BNPP.

13.    Instead, without BNPP's knowledge or consent, a second set of bills of lading was issued for the Cargo ("Second Bills"). These bills of lading were issued in Szczecin, Poland on or about April 28, 2008, and signed and stamped by the Agent Morski (Lukasz Olchowski). This stamp contained the following text: *"LUKASZ OLCHOWSKI, Oktan Energy & V/L Service, Sp. z.o.o., ul. Chielewskiego 22 a, 70-028 SZCZECIN, NIP 955-20-29-087, Regon 811188467"*, indicating that Oktan issued this second set of bills of lading in the country of discharge (Oktan being the buyer of the cargo and charterer of the Vessel). Upon the Vessel's arrival in Gdansk,

the Cargo was released to the buyer, Oktan, without BNPP's knowledge or consent. True and correct copies of the Second Bills are annexed hereto as Exhibit 2.

14.     Even the Second Bills were made to the order of BNPP, and thus would not have allowed for the Cargo to be released to Oktan without BNPP's approval.

15.     BNPP remains holding the Original Bills issued by the Master of the Vessel. Impex purchased the Cargo from its supplier – Tintrade Ltd. – with funds made available to Impex through BNPP's credit facility. The funds used by Impex were provided on the condition that the Original Bills (and thus the Cargo, as the Original Bills were documents of title for the Cargo) would serve as collateral.

16.     BNPP has not been paid for the Cargo by anyone and has not surrendered the Original Bills which constitute title to the Cargo. BNPP therefore remains the titular and actual owner of the Cargo.

17.     As a result of the Cargo being delivered at the delivery port without presentation of the Original Bills, BNPP has suffered losses in the principal amount of $2,496,671.74.

18.     It is estimated that it will take approximately three years to resolve this matter, resulting in the accrual of $374,500.76 of interest (calculated at 5%). Therefore, the total amount sought by BNPP with interest is $2,871,172.50.

**BNPP's Claim Against Availability**

19.     BNPP incorporates paragraphs 1 through 17 above as if set forth fully herein.

20.     Based on the foregoing circumstances set forth in paragraphs 5 through 17, *supra,* Availability is liable to BNPP as the registered owner of the M/T AVAILABILITY for misdelivery of the Cargo without presentation of the Original Bills.

21.     Because Availability released the Cargo to a party which did not present the Original Bills in exchange for such release, Availability breached its obligations to BNPP under the Original Bills and as a carrier of goods by sea, as a result of which breaches BNPP has sustained damages in the amount of $2,871,172.50 (including interest).

### BNPP's Claim Against OVI as Beneficial Owner of the Vessel and Availability's Alter Ego

22.     BNPP incorporates paragraphs 1 through 17 above as if set forth fully herein.

23.     Upon information and belief, OVI is the beneficial owner of the Vessel in that OVI holds itself out as the owner of the Vessel.  Annexed as Exhibit 3 is a true copy of an excerpt from the 2008 Lloyds Register – Fairplay Sea-web, which indicates that the OVI Group owns three vessels through two "registered owners."  As can be seen by review of Exhibit 3, one of those "registered owners" is Availability.

24.     As can be further seen by review of Exhibit 3, Availability owns only one vessel. Upon information and belief, as is usual in the industry, at all times material herein the Vessel is and was Availability's sole asset.

25.     Availability and OVI have the same address.

26.     Availability and OVI have the same telephone number, +371 7 35 48 28.  For comparison purposes, annexed as Exhibit 4 is a printout from OVI's website and an e-mail from Mr. Vanags dated June 11, 2008 from Availability, which show the same telephone number.

27.    Mr. Vanags conducts the business of Availability using OVI's e-mail stem. Review of the Availability June 11, 2008 e-mail annexed as Exhibit 4 shows Mr. Vanags' e-mail as "egils@ovi.lv."

28.    OVI's Director, Egils Vanags, has responded to BNPP's inquiries with respect to the Vessel and the Cargo being discharged without BNPP's authorization as though OVI was the owner of the Vessel, and not Availability.  By way of example, Mr. Vanags' e-mail response of June 11, 2008 annexed as Exhibit 4 shows this conduct.

29.    Based on the foregoing, OVI dominates Availability such that OVI is the recipient of all profits earned by Availability as the owner of the Vessel and is the party which pays for the Vessel's expenses.  Thus, Availability and OVI have commingled funds and/or otherwise are failing to observe corporate formalities.

30.    Based on the foregoing circumstances set forth in paragraphs 5 through 20 *supra,* OVI is liable to BNPP as the beneficial owner of the Vessel, and/or as Availability's alter ego, for delivery of the Cargo without presentation of the Original Bills in the amount of $2,871,172.50 (including interest).

## BNPP's Claim Against Oktan
## For Conversion of the Cargo

31.    BNPP incorporates paragraphs 1 through 17 above as if set forth fully herein.

32.    Oktan has been, and still is, exercising dominion and/or control over the Cargo by possessing the Cargo or, alternatively, has conveyed the Cargo to third parties against BNPP's interests.

33.    Although BNPP has made Oktan aware of BNPP's ownership of the Cargo and has demanded that Oktan return the Cargo or pay BNPP for it as titular owner of the Cargo, Oktan has refused to comply with BNPP's demand, which refusal is inconsistent with BNPP's rights thereto.

34.    Oktan's refusal to return the Cargo or pay for it, despite BNPP being the titular and actual owner of Cargo, constitutes the tort of conversion.

35.    As a result of Oktan's conversion of the Cargo, BNPP has been damaged in the amount of $2,871,172.50 (including interest).

**Relief Requested**

36.    The Shipowner Defendants and Oktan are independently and severally liable to BNPP for BNPP's damages.  Accordingly, BNPP is entitled to security for the full amount of its damages, or $2,871,172.50 (including interest), both from the Shipowner Defendants and from Oktan.

37.    None of the Defendants are found within the Southern District of New York but do have assets, goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to them, are claimed by them, is being held for them or on their behalf, or which is being transferred for their benefit, within the jurisdiction and held in the name(s) of Availability Shipping Ltd., OVI Ltd., and/or Oktan Energy & V/L Service SP z.o.o. with, upon information and belief, the following financial institutions:  Bank of America, N.A.; Bank of China; The Bank of New York; Citibank, N.A.; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; UBS AG; Wachovia Bank, N.A.; Société Générale;

Standard Chartered Bank; BNP Paribas; Calyon Investment Bank; American Express Bank; Commerzbank; ABN Amro Bank; Bank Leumi USA; Banco Popular; Bank of Tokyo-Mitsubishi UFJ Ltd.; or any other financial institution within the Southern District of New York.

**WHEREFORE**, plaintiff BNP Paribas (Suisse) S.A. prays:

1.      That a summons with process of attachment and garnishment may issue against the Defendants Availability Shipping Ltd. and OVI Ltd. in the amount of $2,871,172.50 (including interest), and if Defendants Availability Shipping Ltd. and OVI Ltd. cannot be found, then that their goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to them, is claimed by them, is being held for them or on theirs behalf, or which is being transferred for their benefit, within the district may be attached in an amount sufficient to answer BNP Paribas (Suisse) S.A.'s claim;

2.      That a summons with process of attachment and garnishment may issue against the Defendant Oktan Energy & V/L Service SP z.o.o. in the amount of $2,871,172.50 (including interest), and if Defendant Oktan Energy & V/L Service SP z.o.o. cannot be found, then that its goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to it, is claimed by it, is being held for it or on its behalf, or which is being transferred for its benefit, within the district may be attached in an amount sufficient to answer BNP Paribas (Suisse) S.A.'s claim;

3.    That Defendants Availability Shipping Ltd., OVI Ltd., Oktan Energy & V/L Service SP z.o.o., and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

4.    That judgment be entered in favor of BNP Paribas (Suisse) S.A. and against Availability Shipping Ltd. and OVI Ltd. in the amount of $2,871,172.50 (including estimated interest); and,

5.    That judgment be entered in favor of BNP Paribas (Suisse) SA and against Oktan Energy & V/L Service SP z.o.o. in the amount of $2,871,172.50 (including estimated interest); and,

6.    That this Court grant BNP Paribas (Suisse) SA such other and further relief which it may deem just and proper.

Dated: New York, New York
       July 21, 2008

HOLLAND & KNIGHT LLP

By:    _____
       Michael J. Frevola
       H. Barry Vasios
       Christopher R. Nolan
       195 Broadway
       New York, NY 10007-3189
       Tel:    (212) 513-3200
       Fax:    (212) 385-9010

       *Attorneys for Plaintiff*
       *BNP Paribas (Suisse) SA*

## VERIFICATION

STATE OF NEW YORK )

:ss.:

COUNTY OF NEW YORK )

CHRISTOPHER R. NOLAN, being duly sworn, deposes and says:

I am associated with the firm of Holland & Knight LLP, counsel for BNP Paribas (Suisse) S.A. ("BNPP"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by BNPP and corresponded with BNPP's representatives regarding this matter. I am authorized by BNPP to make this verification, and the reason for my making it as opposed to an officer or director of BNPP is that there are none within the jurisdiction of this Honorable Court.

_____
Christopher R. Nolan

Sworn to before me this
21st day of July, 2008

_____
Notary Public

DIALYZ E. MORALES
Notary Public, State of New York
NO. 01MO6059215
Qualified in New York County
Commission Expires June 25, 20 11

# 5471778_v1

# EXHIBIT 1

Consignee        TO THE ORDER OF BNP PARIBAS (SUISSE) SA,
                 GENEVA

Notify party                                      **ORIGINAL**

| | |
|---|---|
| Motor/steam vessel | AVAILABILITY |
| Name of Master | ALEKSANDRS LEONOVICS |
| Flag | LATVIA |
| Port of Loading | RIGA |
| Port of Discharge | GDANSK FOR ORDERS |

### QUANTITY AND GRADE AS FURNISHED BY SHIPPER
(In case of packages or units the exact number should be stated)

GASOIL 50 PPM (CLOUD 0/CFPP -10)

700.243 Metric Tons (Vac)
699.298 Metric Tons (Air)
845.908 Cubic Meters at 15 Deg. C

The stated weights and/or quantities and grades are supplied by the Shipper and these weights and/or quantities and grades are unknown to the Master.

### CLAUSES / ENDORSEMENTS

CLEAN ON BOARD

FREIGHT PAYABLE AS PER CHARTER PARTY

CUSTOM STATUS: N

Cargo shipped on board and loading completed on the day **26th** of **April** year **2008** in apparent good order and condition and to be delivered (subject to the liberties, conditions, exceptions and limitations hereinafter contained) in the like order and condition at named discharge port or so near thereunto as she may safely get and there discharge always afloat. Freight shall be earned concurrently with delivery and calculated on the gross quantity as furnished by Shipper. Clauses 1 to 11 inclusive on the reverse of this Bill of Lading are incorporated herein and form part of this Bill of Lading.

In witness whereof the Master of the said vessel has signed **3/three** original Bills of Lading all of this tenor and date one of which being accomplished the others to stand void.

MASTER

1. The vessel shall be at liberty

a) to call at any ports, places or transhipment areas in any order for the purpose of loading, transhipping or discharging cargo (including cargo not contained or covered by this Bill of Lading) for all descriptions of vessels; or

b) to tranship cargo (including cargo covered by this Bill of Lading) to or from any other vessel or vessels in port or at sea by any means including, without limitations to the generality of the foregoing, by ship-to-ship transfer, submarine pipeline, land pipeline and intermediate storage or any one or more of them; or

c) to tow or be towed, to assist vessels in all positions of distress, to sail without pilots and to deviate for the purpose of saving life or property or for the purpose of embarking or disembarking persons, spares or supplies by helicopter; or

d) to deviate for any other reasonable purpose.

2. If on passage to the nominated port or place of discharge the Master finds that such port or place is inaccessible owing to ice, he shall immediately request Cargo Owners by radio for revised orders and remain outside the area of ice-bound waters. Upon receipt of such request Cargo Owners shall give orders for the vessel to proceed to an alternative ice-free and accessible port or place of discharge where there are facilities for receiving the cargo in bulk.

3. If on or after the vessel's arrival at a nominated port or place of discharge there is a danger of the vessel being frozen in, the Master shall proceed to the nearest safe and ice-free position and at the same time request Cargo Owners by radio for revised orders. Immediately upon receipt of such request Cargo Owners shall give orders for the vessel either to proceed to an alternative ice-free and accessible port or place where there is no danger of the vessel being frozen in and where there are facilities for receiving the cargo in bulk or to return and discharge at the nominated port or place. If the vessel discharges at the nominated port or place, any risk of physical damage to the vessel by reason of her returning to a port or place in which there is a danger of her being frozen in and any delay thereby be detained there on account of Ice shall be for Cargo Owners' account.

4. (A) The Master shall not be required or bound to sign Bills of Lading for any blockaded port or for any port or place which the Master or Owners in his or their discretion consider dangerous or impossible to enter or reach.

   (B) (i) if the nominated port or place of discharge be blockaded or

   (ii) If owing to any war, hostilities, warlike operation, civil war, civil commotions, revolutions, or the operation of international law (a) entry to any such port or place of discharging or discharging of cargo at any such port or place be considered by the Master or Owners in his or their discretion dangerous or prohibited or (b) it be considered by the Master or Owners in his or their discretion dangerous or impossible or prohibited for the vessel to reach such port or place of discharge;

   Cargo owners shall have the right to order the Cargo to such port of it as may be affected to be discharged at any other port or place of discharging in the vicinity of the said port or place of discharging (provided such other port or place is not blockaded or that entry thereto or discharging of cargo thereat or reaching the same is not in the Master's or Owners' discretion dangerous or prohibited). If in respect of a port or place of discharging no orders be received from Cargo Owners within 48 hours after they or their agents have received from the Owners a request for the nomination of a substitute port or place, Owners shall then be at liberty to discharge the cargo at any port or place which they or the Master may in their or his discretion decide on and such discharging shall be deemed to be due fulfilment of the contract or contracts of affreightment or of the contract contained in or evidenced by this Bill of Lading so far as cargo so discharged is concerned. In the event of the cargo being discharged at any such port other than that to be paid by Cargo Owners and Owners shall have a lien on the cargo for freight and all such extra expenses. All extra expenses involved in reaching and discharging the cargo at any such other port shall be paid by the Cargo Owners and Owners shall have a lien on the cargo for freight and all such extra expenses.

   (C) The vessel shall have liberty to comply with any directions or recommendations as to departure, arrival, routes, ports of call, stoppages, destinations, zones, waters, delivery or in any otherwise whatsoever given by the government of the nation under whose flag the vessel sails or any other government or local authority including any de facto government or local authority or by any person or body acting or purporting to act as or with the authority of any such government or authority or by any committee or person having under the terms of the war risks insurance on the vessel the right to give any such directions or recommendations. If by reason of or in compliance with any such directions or recommendations, anything is done or is not done such shall be deemed not to be a deviation.

   If by reason of or in compliance with any such directions or recommendations the vessel does not proceed to the port or ports, place or places of discharging originally nominated or to which she may have been properly ordered pursuant to the terms of this Bill of Lading, the vessel may proceed to any port or place of discharging which the Master or Owners in his or their discretion may decide on and there discharge the cargo. Such discharging shall be deemed to be due fulfilment of the contract or contracts of affreightment or of the contract contained in or evidenced by this Bill of Lading and Owners shall be entitled to freight as if discharging had been effected at the port or place of discharging originally nominated. All extra expenses involved in reaching and discharging the cargo at any such other port or place of discharging shall be paid by the Cargo Owners and Owners shall have a lien on the cargo for freight and all such extra expenses.

5. General Average shall be payable according to the York/Antwerp rules 1974 as amended 1990 and shall be adjusted in London, but should the adjustment be made in accordance with the law and practice of the United States of America, the following clause shall apply:-

   NEW JASON CLAUSE - In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred, and shall pay the salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belong to strangers. Such deposit as the Carrier or his agent may deem sufficient to cover the estimated contribution of the cargo and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees, or Owners of the cargo to the Carrier before delivery.

6. BOTH TO BLAME CLAUSE - If the liability for any collision in which the vessel is involved while performing this Bill of Lading falls to be determined in accordance with the laws of the United States of America, the following clause shall apply:-

   BOTH TO BLAME COLLISION CLAUSE - If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, mariner, pilot or of the servants of the Carrier in the navigation or in the management of the vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners insofar as such loss or liability represents loss of or damage to or any claim whatsoever of the owners of the said cargo paid or payable by the other or non-carrying vessel or her owners to the owners of the said cargo and set off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

7. CLAUSE PARAMOUNT

   (1) Subject to sub-clause (2) or (3) hereof, this Bill of Lading shall be governed by, and have effect subject to, the rules contained in the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August 1924 (hereafter the "Hague Rules") as amended by the Protocol signed at Brussels on 23rd February 1968 (hereafter the "Hague-Visby Rules"). Nothing contained herein shall be deemed to be either a surrender by the carrier of any of his rights or immunities or any increase of any of his responsibilities or liabilities under the Hague-Visby Rules.

   (2) If there is governing legislation which applies the Hague Rules compulsorily to this Bill of Lading, to the exclusion of the Hague-Visby Rules, then this Bill of Lading shall have effect subject to the Hague Rules. Nothing herein contained shall be deemed to be either a surrender by the carrier of any of his rights or immunities or an increase of any of his responsibilities or liabilities under the Hague Rules.

   (3) If there is governing legislation which applies the United Nations Convention on the Carriage of Goods by Sea 1978 (Hamburg Rules) compulsorily to this Bill of Lading to the exclusion of the Hague-Visby Rules, then this Bill of Lading shall have effect subject to the Hamburg Rules. Nothing herein contained shall be deemed to be either a surrender by the carrier of any of his rights or immunities or an increase of any of his responsibilities or liabilities under the Hamburg Rules.

   (4) If any term of this Bill of Lading is repugnant to the Hague-Visby Rules, or Hague Rules, or Hamburg Rules, if applicable, such term shall be void to that extent but no further.

   (5) Nothing in this Bill of Lading shall be construed as in any way restricting, excluding or waiving the right of any relevant party or person to limit his liability under any available legislation and/or law.

8. EXEMPTIONS AND IMMUNITIES OF ALL SERVANTS AND AGENTS OF THE OWNER

   No servant or agent of Owners (including every independent contractor from time to time employed by Owners) shall in any circumstances whatsoever be under any liability whatsoever to the shipper, consignees or owner of the cargo or to any holder of this Bill of Lading for any loss, damage or delay of whatsoever kind arising or resulting directing or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment and, without prejudice to the generality of the foregoing provisions in this Clause, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defence and immunity of whatsoever nature applicable to Owners or to which Owners are entitled hereunder shall also be available and shall extend to protect every such servant or agent of Owners acting as aforesaid and for the purpose of all the foregoing provisions of this Clause, Owners are or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be their servants or agents from time to time (including independent contractors as aforesaid) and all such persons shall to this extent be or be deemed to be parties to the contract contained in or evidenced by this Bill of Lading.

9. In the event of the cargo herein mentioned being lost or damaged Owners in addition to the rights, immunities and limitations of liability herein contained or to which they may otherwise be entitled and without prejudice thereto shall be entitled to such limitation of liability in respect of such loss or damage as may be provided by the law of the country of the vessel's flag in force at the date of issue hereof and for the purposes of any limitation of liability neither this Bill of Lading nor the contract contained in or evidenced hereby shall, notwithstanding anything herein contained, be construed to be or to give rise to a personal contract so as to deprive Owners of such limitation.

10. (A) The contract contained in or evidenced by this Bill of Lading shall, notwithstanding any other term set out or incorporated herein, be construed and the relations between the parties determined in accordance with the law of England.

    (B) Any dispute arising out of this Bill of Lading shall be decided by the English Courts to whose jurisdiction the parties hereby agree.

    Notwithstanding the foregoing, but without prejudice to any party's right to arrest or maintain the arrest of any maritime property, either party may, by giving written notice of election to the other party, elect to have any such dispute referred to the arbitration of a single arbitrator in London in accordance with the provisions of the Arbitration Act 1950, or any statutory modification or re-enactment thereof for the time being in force.

    A party shall lose its right to make such an election only if –
    (a) it receives from the other party a written notice of dispute which –
        (i) states expressly that a dispute has arisen out of this Bill of Lading;
        (ii) specifies the nature of the dispute; and
        (iii) refers expressly to this Clause 10 (B).

    and

    (b) it fails to give notice of election to arbitration not later than 30 days from the date of receipt of the notice of dispute.

    The parties hereby agree that either party may –
    (a) appeal to the High Court on any question of law arising out of an award;
    (b) apply to the High Court for an order that the arbitrator state the reasons for his award;
    (c) give notice to the arbitrator that a reasoned award is required; and
    (d) apply to the High Court to determine any questions of law arising in the course of the reference.

    It shall be a condition precedent to the right of any party to a stay of any legal proceedings in which maritime property has been, or may be, arrested in connection with a dispute under this Bill of Lading that that party furnishes to the other party security to which that other party would have been entitled in such legal proceedings in the absence of a stay.

11. Owners shall have an absolute lien upon the cargo to which this Bill of Lading relates and any documents relating thereto for

    all demurrage, shifting expenses and cargo dues, deviation payments, and general average payable under or in connection with the contract contained in or evidenced by this Bill of Lading or payable

FIRST ORIGINAL

# TANKER BILL OF LADING No.1

## FOR BULK OIL CARGOES

Shipped in good order and conditions by      **TINTRADE LTD**

In the  **LATVIAN**

Motor/Steam Vessel called the      **AVAILABILITY**

Captain                 **ALEKSANDRS LEONOVICS**

And bound for          **GDANSK FOR ORDERS**

The Cargo of              **GASOIL 50 PPM (CLOUD 0/CFPP -10)**

**1,520.284** Metric Tons (Vac)

**1,518.232** Metric Tons (Air)

**1,830.345** CBM at 15 Deg C

Say :   *One thousand five hundred and twenty, 284 metric tons*

Which are to be delivered in the like good order and conditions at the aforesaid

Port of discharge      **GDANSK FOR ORDERS**

Unto    **to the order of BNP PARIBAS (SUISSE) SA, GENEVA**

or  to his/their Assignees, on payment of Freight and other conditions as per Charter Party.

## CLEAN ON BOARD. FREIGHT PAYABLE AS PER CHARTER PARTY.

In witness whereof the Master of the said Vessel has signed THREE Originals Bills of Lading, all this tenor and date, one of which being accomplished, the others to stand void.

Weight, Quality and Quantity unknown to me.

Loaded and dated in *Riga*                                    **April 27, 2008**

The Master
ALEKSANDRS LEONOVICS

# EXHIBIT 2

CODE NAME: "CONGENBILL". EDITION 1994

| Shipper | KONOSAMENT | B/L No.1 |
|---|---|---|
| TINTRADE LTD. | ZASTĘPCZY | |

KONOSAMENT
ZASTĘPCZY

B/L No.1

Reference No.

*Consignee*

TO THE ORDER OF BNP PARIBAS (SUISSE) SA, GENEVA

COPY

*Notify address*

| *Vessel* | *Port of loading* |
|---|---|
| MT AVAILABILITY | RYGA |

Port of discharge

GDAŃSK FOR ORDERS

*Shipper's description of goods*                                    *Gross weight*

GAS OIL 50PPM (CLOUD 0/CFPP -10)

                    817,381 MT VAC
                    816,278 MT AIR
                    985,152 CBM AT 15 DEG

    "CLEAN ON BOARD"
    "FREIGHT PAYABLE AS PER CHARTER PARTY"

---

| Freight payable as per CHARTER-PARTY dated | SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above |
|---|---|
| Time used for loading ..................days...............hours | Weight, measure, quantity, condition, contents and value unknown.  IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one which being accomplished the others shall be void.  FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| *Freight payable at* | *Place and date of issue* |
|---|---|
| AS PER C/P | Szczecin 28.04.2008 |
| *Number of original Bs/L* | ŁUKASZ OLCHOWSKI |

Oktan Energy & V/L Service
Sp. z o.o.
ul. Chmielewskiego 22 a
70-028 SZCZECIN
NIP 955-20-29-087, Regon 811188467

AGENT MORSKI

CODE NAME: "CONGENBILL", EDITION 1994

| | | |
|---|---|---|
| *Shipper* | KONOSAMENT | B/L No.2 |
| TINTRADE LTD. | ZASTĘPCZY | |

Reference No.

*Consignee*

TO THE ORDER OF BNP PARIBAS (SUISSE) SA, GENEVA

*Notify address*

COPY

mt "Availability

bl 28.4.08   817.381
bl 28.4.08   1403.146

2220.527

| *Vessel* | *Port of loading* |
|---|---|
| MT AVAILABILITY | RYGA |

Port of discharge

GDAŃSK FOR ORDERS

*Shipper's description of goods*         *Gross weight*

GAS OIL 50PPM (CLOUD 0/CFPP -10)

```
                    1 403,146 MT VAC
                    1 401,252 MT AIR
                    1 691,149 CBM AT 15 DEG
```

"CLEAN ON BOARD"
"FREIGHT PAYABLE AS PER CHARTER PARTY"

| | |
|---|---|
| Freight payable as per CHARTER-PARTY dated | SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above |
| | Weight, measure, quantity, condition, contents and value unknown. |
| Time used for loading .................days..............hours | IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one which being accomplished the others shall be void. |
| | FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| *Freight payable at* | *Place and date of issue* |
|---|---|
| AS PER C/P | Szczecin 28.04.2008 |
| *Number of original Bs/L* | ŁUKASZ OLCHOWSKI |
| | Okran Energy & V/L Service |
| | Sp. z o.o. |
| | ul. Chmielewskiego 22 a |
| | 70-028 SZCZECIN |
| | NIP 955-20-29-087, Regon 811188467 |

AGENT MORSKI

*Łukasz Olchowski*

**EXHIBIT 3**

# COMPANY OVERVIEW

| | | | |
|---|---|---|---|
| Short Name | **Availability Shipping Ltd** | Company No. | **5184197** |
| Full Company Name | **Availability Shipping Ltd** | | |
| Nationality of Registration | **Latvia** | Nationality of Control | **Latvia** |
| | | Founded | **2005** |

**This Owner is part of Group: OVI Ltd**

## GROUP STRUCTURE

This Owner is part of the following Group Structure

## GROUP OVERVIEW

| Group Name | Group-owned Newbuilds | Group-owned Ships | Chartered-in Ships | Chartered-out Ships | Total Group-operated Fleet | | No. Owned Operators | No. Registered Owners |
|---|---|---|---|---|---|---|---|---|
| OVI Ltd | 0 | 3 | 0 | 0 | 3 | | 1 | 2 |

## MANAGEMENT LEVEL (EXCLUDES NEWBUILDS)

| | Operated Ships | | Managed Ships | | DOC Comp. Ships | | All Ships |
|---|---|---|---|---|---|---|---|
| | Group-Owned | in Total | Group-Owned | in Total | Group-Owned | in Total | |
| **Group-Owned Companies** | | | | | | | |
| OVI Ltd | 3 | 3 | 2 | 2 | 0 | 0 | 3 |
| **Non Group-Owned Companies** | | | | | | | |
| Livonia Shipping Co | 0 | 4 | 1 | 5 | 2 | 5 | 7 |

## REGISTERED OWNERS

| RegisteredOwner | ShipCount |
|---|---|
| Availability Shipping Ltd | 1 |
| OVI Ltd | 2 |

© 2008 Lloyd's Register - Fairplay Ltd. Lloyd's Register - Fairplay Ltd assumes no responsibility and shall not be liable to any person for any loss, damage or expense caused by reliance on the information or advice in this document or howsoever provided, unless that person has a contract with Lloyd's Register - Fairplay Ltd and in that case any responsibility or liability is exclusively on the terms and conditions set out in that contract.

# COMPANY OVERVIEW

| | | | |
|---|---|---|---|
| Short Name | **OVI Ltd** | Company No. | **1822370** |
| Full Company Name | **'OVI' Ltd** | | |
| Nationality of Registration | **Latvia** | Nationality of Control | **Latvia** |
| | | Founded | **1992** |

## GROUP STRUCTURE

## GROUP OVERVIEW

| Group Name | Group-owned Newbuilds | Group-owned Ships | Chartered-in Ships | Chartered-out Ships | Total Group-operated Fleet | No. Owned Operators | No. Registered Owners |
|---|---|---|---|---|---|---|---|
| OVI Ltd | 0 | 3 | 0 | 0 | 3 | 1 | 2 |

## MANAGEMENT LEVEL (EXCLUDES NEWBUILDS)

| | Operated Ships | | Managed Ships | | DOC Comp. Ships | | All Ships |
|---|---|---|---|---|---|---|---|
| | Group-Owned | in Total | Group-Owned | in Total | Group-Owned | in Total | |
| **Group-Owned Companies** | | | | | | | |
| OVI Ltd | 3 | 3 | 2 | 2 | 0 | 0 | 3 |
| **Non Group-Owned Companies** | | | | | | | |
| Livonia Shipping Co | 0 | 4 | 1 | 5 | 2 | 5 | 7 |

## REGISTERED OWNERS

| RegisteredOwner | ShipCount |
|---|---|
| Availability Shipping Ltd | 1 |
| OVI Ltd | 2 |

© 2008 Lloyd's Register - Fairplay Ltd. Lloyd's Register - Fairplay Ltd assumes no responsibility and shall not be liable to any person for any loss, damage or expense caused by reliance on the information or advice in this document or howsoever provided, unless that person has a contract with Lloyd's Register - Fairplay Ltd and in that case any responsibility or liability is exclusively on the terms and conditions set out in that contract.

**MATCHING RECORDS**

Drag a column header here to group by that column

| LR/IMO Ship No. | Name of Ship | Built | Callsign | Deadweight | |
|---|---|---|---|---|---|
| | | ◇ | ◇ | ◇ | |
| 7715410 | AVAILABILITY | 1979-03 | YLBE | 2,550 | Latvi |
| 7111690 | MATALOBOS | 1971-00 | YLAI | 1,163 | Latvi |
| 8227393 | TEIKA | 1984-00 | YL2245 | 323 | Latvi |

| Current page: 1 | Page count: 1 | Visible on the page: 1 - 3 | Total rows: 3 |
|---|---|---|---|

# EXHIBIT 4



OIL PRODUCTS SALE

INFO LINE (+371)-73!

HOME        BUNKERING        PRODUCTS        PARTNERS        (



**breaking news**

Starting from 19th May, 2005 when MARPOL Annex VI changes regarding bunkering procedures will be introduced, OVI will be fully capable to function in the new scope of rules. **more...**

As established traders of the bunker industry, OVI also act as agents, offering the full range of distillates to meet nationwide demand at all times.

GENERAL TERMS OF SAI CONDITIONS CONCERN SUPPLY OF MARINE FUE LTD.

**Welcome to OVI Ltd.!**

**OVI** Ltd. is a Latvian company trading with gasoline, gasoil, heavy fuel oils ar petroleum products in the territory of Latvia since April 1992.

The company has its own filling stations and a park of gasoline and heavy fue trucks as well as a bunkering vessel and tanker.



**Among our partners** there are bunkering and oil giants like DAN BUNKERING, BEBEKA, HEINRICH WEGENER & SOHN and <u>others</u>

submit

quick search our site

**HOME        BUNKERING        PRODUCTS        GENERAL TERMS OF SALE        OUR PARTNERS        CONTACTS**

**OVI.LV © 2005**

EN    LV

JUL-21-2008 11:48A FROM:DF Properties, LLC 518-793-7895


**BNP PARIBAS**
11/06/2008 14:09

Michael James STANNING
BNP PARIBAS (SUISSE) SA (BFI)
Energy Commodities Export Project / AC3
2, Place de Hollande - 1201 Genève

tel : +41 (0) 58 212 2339    fax : +41 (0) 58 212 0089

To:     Denis GRIGORIEV/CH/EUROPE/GROUP@BNPPARIBAS
cc:     Andreas Buri/CH/EUROPE/GROUP@BNPPARIBAS, Cyrus
Siassi/CH/EUROPE/GROUP@BNPPARIBAS, Xavier
CANCER/CH/EUROPE/GROUP@BNPPARIBAS, Pierre Gay/CH/EUROPE/GROUP@BNPPARIBAS,
Marina YANKOVSKAYA/CH/EUROPE/GROUP@BNPPARIBAS, Nathalie
BARLETTA/CH/EUROPE/GROUP@BNPPARIBAS, Jean-Pierre
MARQUIS/CH/EUROPE/GROUP@BNPPARIBAS, Daniel
ARNAUD/CH/EUROPE/GROUP@BNPPARIBAS
Subject:   mv 'Availability' - International Impex / Oktan

Dear All,

Please find hereafter contents of the reply received from the vessel
operator in Riga.

Q U O T E

----------------- Forwarded by Michael James STANNING/CH/EUROPE/GROUP on 11/06/2008 14:05
-----------------

# Internet

egils@ovi.lv - 11/06/2008 13:23

To:     Laurent Bapst, Michael James STANNING
cc:

Subject:   availability

Good day Sirs,
Just received a letter from you regarding some problems with the discharge
of gasoil for Oktan Energy account.

I previously spoke with Ian Rigby, regarding this matter, and also was
contacted by someone from your bank this week (sorry, do not recall the
name).

I mentioned that we, as always, discharged the gasoil by Oktan's
instructions, because obviously we had a contract with Oktan, and their
wrongdoings with the 3rd party cannot be monitored by us. But nevertheless,
you can find my contacts below, so pls contact me if further assistance
needed.

Sincerely,

Egils Vanags
Availability Shipping ltd.
Director
Tel: +371 7 35 48 28
Fax: +371 7 35 55 38
Mob: +371 2 6 15 55 41

U N Q U O T E